**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Gatti, | No. CV-01-175-TUC-FRZ |
| Plaintiff, | |
| v. | **ORDER** |
| Reliance Standard Life Insurance Company, | |
| Defendant. | |

**Background**

In this case, which arises under the Employee Retirement Income Security Act (ERISA), Plaintiff Terri Gatti seeks reinstatement of long-term disability benefits that Defendant Reliance Standard Life Insurance Company (Reliance) discontinued in April 2000.

On February 24, 2003, the Court issued an Order resolving the parties' then-pending motions for summary judgment. The Court reviewed de novo Reliance's decision to terminate Gatti's benefits, concluding that such a review was appropriate because either: (1) in light of *Jebian v. Hewlett-Packard Company*, 310 F.3d 1173 (9th Cir. 2002), Reliance's benefits decision was made outside the boundaries of conferred discretion; or (2) in light of *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001), there was a serious conflict of interest because Reliance violated the treating physician rule. In reviewing Reliance's decision de novo, the Court determined that Gatti had established entitlement to benefits under the general disability provisions of the ERISA plan because she

1  was disabled from hepatitis B and that Reliance had failed to establish that the payment of
2  benefits was precluded by the mental or nervous disorder limitation in the ERISA plan.

3  The Court ordered Reliance to reinstate Gatti's long-term disability benefits and pay
4  back payments. In a subsequent Order, the Court awarded Gatti attorney's fees and costs
5  based on the parties' stipulation.

6  In *Gatti v. Reliance Standard Life Insurance Company*, 415 F.3d 978 (9th Cir. 2005),
7  the Ninth Circuit Court of Appeals concluded that the Court had erred in applying a de novo
8  standard of review because *Jebian* did not control and *Regula* was no longer good law. The
9  Ninth Circuit remanded the case to the Court for "reconsideration under the appropriate
10 standard of review." *Gatti*, 415 F.3d at 985. The Ninth Circuit instructed the Court to
11 review Reliance's decision for an abuse of discretion, unless the Court, based on other
12 evidence of substantive harm, concluded that a de novo review was still justified. *Id.* at 986.
13 The Ninth Circuit also instructed the Court to "reconsider its award of fees and costs
14 depending on the results of the merits determination." *Id.*

15 Before the Court could comply with the Ninth Circuit's opinion – indeed, before the
16 Ninth Circuit's mandate had issued – Gatti filed a motion for summary judgment. Reliance
17 filed a cross-motion for summary judgment. Both parties filed all possible responses and
18 replies. Also pending before the Court are Gatti's unopposed motion to strike portions of
19 Reliance's reply and Gatti's unopposed request for hearing.

20 This Order complies with the Ninth Circuit's mandate and resolves the motion and
21 cross-motion for summary judgment, the motion to strike, and the request for hearing.

## Motion to Strike

23 In her Motion to Strike, Gatti seeks to strike references in Reliance's Reply
24 Memorandum to a study allegedly published by the National Institute of Health. Gatti notes
25 that this study is not included in the Administrative Record and, therefore, runs afoul of the
26 Ninth Circuit's directive that the Court "may properly consider anything that was part of the
27 administrative record before February 6, 2001." *Id.* at 986. Reliance did not file a response
28 to the motion to strike.

The Court deems Reliance's failure to respond to the motion to strike to be a consent to the Court granting the motion. *See* Rules of Practice of the United States District Court for the District of Arizona LRCiv 7.2(i). Moreover, striking the references is appropriate because the study is not part of the administrative record. Finally, Reliance has provided nothing to demonstrate that the study even exists – it has not provided the name of the study, the date on which it was published, a citation for the study, or a copy of the study. Thus, the Court will strike, and will not consider, Reliance's references to, and discussion of, the alleged National Institute of Health study, which are located on page 2, lines 15-19, and page 4, lines 16-17, of Reliance's Reply Memorandum in Support of its Motion for Summary Judgment.

## Motion and Cross-Motion for Summary Judgment

**A.    Standard of Review**

The Ninth Circuit instructed the Court to review Reliance's decision for an abuse of discretion, unless the Court "concludes that *de novo* review is nonetheless justified based on other evidence of substantive harm." *Gatti*, 415 F.3d at 986. Gatti has not argued in this remand that de novo review is justified based on other evidence of substantive harm. Thus, the Court will review Reliance's decision for an abuse of discretion.

"Deferential review, of course, does not mean no review." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir. 2004). The Court cannot uphold Reliance's decision if Reliance relied on clearly erroneous findings of fact, failed to base its decision on substantial evidence, or failed to ground the decision on a reasonable basis. *See Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005); *Jordan*, 370 F.3d at 879; *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331-32 (9th Cir. 1996), *overruled on other grounds in Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999).[1]

---

[1] Reliance also could have abused its discretion by "(1) render[ing] a decision without explanation, [or] (2) constru[ing] provisions of the plan in a way that conflicts with the plain language of the plan." *Boyd*, 410 F.3d at 1178. The parties have not argued on remand that

**B.     Facts**

In reviewing Reliance's decision, the Court will "consider anything that was part of the administrative record before February 6, 2001, the date that Reliance made its final decision." *Gatti*, 415 F.3d at 986.  In the Court's February 24, 2003 Order, the Court set forth an eleven-page, detailed recitation of the facts contained in the administrative record. Rather than repeat those facts in their entirety, the Court incorporates them as part of this Order.  However, the Court will provide an abbreviated discussion of the facts central to the dispute.

Gatti, while employed as an account executive at PaineWebber Group, was covered under a group long-term disability policy governed by ERISA and issued by Reliance. Gatti was diagnosed with Hepatitis B in 1992 and stopped working due to complications from the disease, including fatigue.  [Gatti Record 517]  Reliance accepted her claim for long-term disability benefits, effective May 1993.  [Gatti Record 519-20]

In April 2000, Reliance terminated Gatti's benefits.  [Gatti Record 32-35]  Reliance notified Gatti that, based on its review of her medical records, it had determined that she had not been disabled due to a physical disability since November 1997, when her "liver enzymes . . . returned to a normal range" and her "Hepatitis B [became] inactive."  [Gatti Record 33-34]  Reliance determined that Gatti was entitled to additional benefits under the mental or nervous disorder limitation of her policy because she had been diagnosed with Bipolar Disorder in November 1997.  [Gatti Record 34]  But Reliance terminated this benefit because it had paid under the mental/nervous disorder limitation for more than the maximum twenty-four months.  [Gatti Record 34]

Gatti appealed the termination of her benefits, claiming she was "disabled from something physical."  [Gatti Record 23]  In July 2000, Reliance had Dr. Steven J. Feagin, an independent medical specialist, review Gatti's claim file through May 18, 2000.  [Gatti Record 71]  After reviewing the file, Dr. Feagin stated:

---

either of these grounds is applicable.

- 4 -

> While no one argues with the diagnosis of Hepatitis B, it is quite clear that the claimant has not been as physically impaired as she has claimed. The gastroenterologists, Drs. Sampliner and Rice, are certainly correct in their statements that fatigue does not always correlate well with the level of liver enzymes. In this case though, one has now seen more than 2 ½ years of normal enzymes with reversion of the Hepatitis Be Ag from positive to negative. The claimant has at times been described as "doing relatively well" with her hepatitis being said to be "in remission". In addition, the claimant has had a quite active social life if one judges from the recurrent problems with her boyfriends prompting exacerbations of her anxiety and depression.
>
> . . . .
>
> Chronic Hepatitis B Infection – There has been no evidence of ongoing disease activity and there is nothing objective to confirm this as the source of the claimant's fatigue complaints in recent years. The attending physicians have simply taken the claimant's self-reported fatigue complaints and have attributed them to the hepatitis. There has been no confirmation of the validity of the fatigue complaints and there has been no evidence of ongoing disease activity.
>
> . . . .
>
> Multiple Psychiatric Issues – As noted above, the claimant has had multiple diagnoses for many years. The diagnosis of bipolar disease has come into question recently but it is unclear if this issue is legitimately raised or simply brought into question in an attempt to distance this from the fatigue complaints. The claimant has clearly had ongoing chronic psychiatric issues with episodic deteriorations in status related to her recurring failures in relationships. It is actually unclear whether she has had continuous psychiatric restrictions and limitations prohibiting her occupation, but it is quite clear that her psychiatric status has been her primary limiting impairment on an episodic basis.

[Gatti Record 72-73]

In October 2000, Reliance affirmed its decision to terminate Gatti's benefits. [Gatti Record 1, 6] Reliance stated that it had looked to other factors (beyond the hepatitis B) to explain Gatti's fatigue because her liver functions had normalized and her Hepatitis Be Ag findings had been negative for more than two years. [Gatti Record 3] In affirming its decision to terminate benefits, Reliance relied on Dr. Feagin's report, concluding that Gatti had not been continuously physically disabled since 1997, and that "[a]ssuming *arguendo*"

that Gatti was disabled since November 1997, her disability was due to her psychiatric illness, not her Hepatitis B. [Gatti Record 4-5]

Because Reliance had not provided certain documents to Gatti, Reliance gave Gatti an opportunity to present Reliance with "any additional medical evidence which she believes might allow [Reliance] to reinstate her benefits." [Gatti Record 6] Among other things, Gatti submitted a December 7, 2000 letter from her treating physician, Dr. Nicholas H. Rice. [Gatti Record 571] Dr. Rice indicated that "[s]ome new objective information" had become available. [Gatti Record 571] Dr. Rice stated that he believed that Gatti:

> has a physical ailment, namely viral hepatitis, which has caused a chronic disease state. Her ongoing symptoms include fatigue and weakness since November of 1992. Although her liver enzymes have normalized recently, the symptoms persist. This is not unusual in cases of viral hepatitis as I indicated in my earlier correspondence.
>
> The new information is the result of a HBV DNA test, a recently introduced procedure. The attached result indicates that [Gatti] has active viral replication and therefore an ongoing disease process. This is objective information to support the symptoms [Gatti] has described.

[Gatti Record 571]

In February 2001, Reliance again declined to reinstate Gatti's benefits. [Gatti Record 562] Reliance rejected the additional information Dr. Rice provided, claiming that the HBV DNA test suggested only that Gatti had active hepatitis B on the date of the exam (September 28, 2000), but did not establish that Gatti had active hepatitis B prior to the exam or that the hepatitis B precluded Gatti from working on September 28, 2000, or prior to the exam. [Gatti Record 563]

**C.   Discussion**

Reliance "does not dispute the premise that active Hepatitis B is accompanied by chronic fatigue." [U.S.D.C. document #54 at 9] Indeed, Reliance found Gatti disabled and consistently paid benefits from 1992 through November 1997 based on the symptoms from active hepatitis B. And, even if Gatti's bipolar disorder caused or contributed to her fatigue, Reliance has conceded that benefits are still payable beyond the mental/nervous disorder

- 6 -

limitation "[i]f the individual remains totally disabled due to the physical condition." [U.S.D.C. document #55 at 3; U.S.D.C. document #52 at 14]  Thus, even if Gatti had a disabling bipolar disorder, she would still be entitled to benefits, under Reliance's interpretation of its policy, if she remained totally disabled due to hepatitis B symptoms.

Before his December 7, 2000 letter, Dr. Rice had consistently stated that Gatti had chronic hepatitis B with continuing fatigue symptoms and that Gatti's continuing fatigue symptoms were not unusual for chronic hepatitis B patients, notwithstanding normalized liver enzyme levels. [Gatti Record 101-02, 118, 135]  Although Dr. Feagin accepted this position, he rejected a finding of disability based on chronic hepatitis B because "[t]here has been no evidence of ongoing disease activity and there is nothing objective to confirm this as the source of [Gatti]'s fatigue complaints in recent years." [Gatti Record 72-73]

In his December 7, 2000 letter, Dr. Rice stated that, although Gatti's liver enzymes had normalized, the recently introduced HBV DNA test indicated that Gatti had "active viral replication and therefore an ongoing disease process," which would constitute "objective information to support the symptoms she has described." [Gatti Record 571]  Reliance rejected Dr. Rice's conclusion, claiming that the HBV DNA test only suggested that Gatti had active hepatitis B on the date of the exam (September 28, 2000), but did "not prove that her [hepatitis B] was active in the months/years leading up to September 28, 2000" or that Gatti's hepatitis B "rendered her unable to work in [the] months/years prior to the date of testing." [Gatti Record 563]

Although Reliance was not required to accord special weight to Dr. Rice's opinion, Reliance could not arbitrarily refuse to credit Gatti's reliable evidence, "including the opinions of a treating physician." *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003); *Jordan*, 370 F.3d at 879.  Dr. Rice's December 7, 2000 conclusion responds directly to Dr. Feagin's prior conclusion rejecting a finding of disability based on chronic hepatitis B.  But, rather than present the HBV DNA test result information to Dr. Feagin or any other medical professional for review, Reliance's non-medical personnel made ipse dixit conclusions about the DNA evidence that were

unsupported by the record or by any medical evidence. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001) ("[A]n abuse of discretion occurs when a plan administrator fails to develop facts necessary to make its determination."); *see also Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1464 (9th Cir. 1997) ("[T]o deny the claim without explanation and without obtaining relevant information is an abuse of discretion."). *Cf. Moon v. Unum Provident Corp.*, 405 F.3d 373, 375-78 (6th Cir. 2005) (noting that Dr. Feagin reviewed applicant's initial claim, applicant's appeal submissions, and applicant's new medical evidence ); *Davis v. Unum Life Ins. Co. of America*, 2005 WL 743082, **5-6 (N.D. Ill. 2005) (Dr. Feagin reviewed applicant's medical records, and reviewed medical records again after applicant submitted additional medical records); *Orndorf v. Paul Revere Life Ins. Co.*, 2004 WL 3413979, **9-10 (D. Mass. 2004) (Dr. Feagin reviewed applicant's medical history, and, when plan administrator was presented with additional medical records, Dr. Feagin reviewed these additional records). There is no evidence in the record challenging the validity of the HBV DNA test or suggesting that it was available prior to the date of the exam. Nor is there any evidence in the record suggesting that, had HBV DNA tests been available in November 1997 through April 2000, they would have yielded results different from the September 28, 2000 test.

Reliance abused its discretion when it arbitrarily rejected Dr. Rice's December 2000 conclusion regarding Gatti and denied her benefits. Reliance's February 2001 findings were not based on evidence, substantial or otherwise. They were simply based on Reliance's non-medical personnel's supposition. That is arbitrary and insufficient. Thus, Reliance is not entitled to summary judgment.

However, Gatti has the burden of establishing her entitlement to benefits under the general provisions of the ERISA plan. *See Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998). The Court, based on the record before it, cannot conclude that a "reasonable fiduciary would necessarily have to grant the claim or that a remand to [Reliance] would be a useless formality." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073 (2nd Cir. 1995). *See Mizzell v. Paul Revere Life Ins. Co.*, 118 F. Supp. 2d 1016, 1023

(C.D. Cal. 2000) (citing *Miller* and remanding because "[t]he record before the Court is inadequate to conclude that there is no possible evidence that could support a denial of benefits"); *cf. Dionida v. Reliance Standard Life Ins. Co.*, 50 F. Supp. 2d 934, 942 (N.D. Cal. 1999) (declining to remand, but citing *Miller* and stating that "[a] court that finds a plan administrator has abused its discretion may determine a claimant's eligibility for benefits if it finds that remand would be 'useless formality' because the plan administrator 'would necessarily have to grant the claim'"). Thus, the Court will not grant summary judgment to Gatti and will not award benefits directly. Instead, the Court will remand this matter to Reliance for reconsideration.

### Attorney's Fees

The Ninth Circuit Court of Appeals instructed the Court to "reconsider its award of fees and costs depending on the results of the merits determination." *Gatti*, 415 F.3d at 986.

The Court's award of fees and costs was based on the parties' stipulation. [U.S.D.C. document 83 at 2] The parties stipulated to an award of attorney's fees and costs, but qualified that agreement with a specific stipulation that, "in the event Defendant's appeal is successful and the decision of the District Court is reversed, or if the Appellate Court vacates the award of fees, Plaintiff will not be entitled to the stipulated amount of fees and costs." [U.S.D.C. document #78] Because the Ninth Circuit reversed this Court's original decision, the Court, in accordance with the parties' stipulation, will vacate the award of fees and costs.

The parties have not addressed the standard for whether the Court should exercise its discretion and award attorney's fees and costs to either party. *See* 29 U.S.C. § 1132(g)(1). The Court will provide the parties with an opportunity to do so.

### Request for Hearing/Request for Oral Argument

It is unclear whether Gatti's Request for Hearing is a request for oral argument on the motions for summary judgment, an issue that was also raised in Gatti's motion for summary judgment and response to Reliance's cross-motion for summary judgment, or a request that the Court make a "timely determination of this matter." To the extent it is a request for oral

argument, the Court, in its discretion, will deny the request; the Court has determined that the issues have been fully and adequately briefed and that oral argument would not aid the Court in its understanding of the issues. To the extent it is a request for a determination of this matter, the Court will deny the request as moot; this Order constitutes a determination of the matter.

## Conclusion

In light of the foregoing,

**IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (U.S.D.C. document #100) is **DENIED**.

2. Defendant's Cross-Motion for Summary Judgment (U.S.D.C. document #105) is **DENIED**.

3. Plaintiff's Motion to Strike (U.S.D.C. document # 113) is **GRANTED**.

4. Plaintiff's Request for Hearing (U.S.D.C. document #118) is **DENIED AS MOOT**.

5. Plaintiff's requests for oral argument (contained in U.S.D.C. documents #100 and #107) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to Defendant for reconsideration of Plaintiff's claim in a manner consistent with this decision.

**IT IS FURTHER ORDERED** that the parties are granted leave to file motions and memoranda on the issue of whether the Court should exercise its discretion and award attorney's fees and costs to either party. **Any motions and supporting memoranda shall fully comply with the Local Rules governing costs and fees.**

**IT IS FURTHER ORDERED** that the Clerk of the Court is **DIRECTED TO**:

1. **STRIKE** Defendant's references and discussion of the alleged National Institute of Health study, which are located on page 2, lines 15-19, and page 4, lines 16-17, of Defendant's Reply Memorandum in Support of its Motion for Summary Judgment (U.S.D.C. document #116).

2. **ENTER** judgment accordingly.

DATED this 13th day of March, 2006.

*Frank R. Zapata*
FRANK R. ZAPATA
United States District Judge